UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

RODERICOL MURPHY,

              Plaintiff,

v.

UNKNOWN KRAGER et al.,

              Defendants.

_____/

Case No. 1:22-cv-735

Honorable Sally J. Berens

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Plaintiff previously sought (ECF No. 2) and was granted leave to proceed *in forma pauperis* (ECF No. 4). Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, Plaintiff consented to proceed in all matters in this action under the jurisdiction of a United States magistrate judge. (ECF No. 1, PageID.4.)

This case is presently before the Court for preliminary review under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), pursuant to 28 U.S.C. § 1915A(b) and 42 U.S.C. § 1997e(c). The Court is required to conduct this initial review prior to the service of the complaint. *See In re Prison Litigation Reform Act*, 105 F.3d 1131, 1131, 1134 (6th Cir. 1997); *McGore v. Wrigglesworth*, 114 F.3d 601, 604–05 (6th Cir. 1997).

Service of the complaint on the named defendant(s) is of particular significance in defining a putative defendant's relationship to the proceedings. "An individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process." *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S.

344, 347 (1999). "Service of process, under longstanding tradition in our system of justice, is fundamental to any procedural imposition on a named defendant." *Id.* at 350. "[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." *Id.* (citations omitted). That is, "[u]nless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights." *Id.* at 351. Therefore, the PLRA, by requiring courts to review and even resolve a plaintiff's claims before service, creates a circumstance where there may only be one party to the proceeding—the plaintiff—at the district court level and on appeal. *See, e.g.*, *Conway v. Fayette Cnty. Gov't*, 212 F. App'x 418 (6th Cir. 2007) (stating that "[p]ursuant to 28 U.S.C. § 1915A, the district court screened the complaint and dismissed it without prejudice before service was made upon any of the defendants . . . [such that] . . . only [the plaintiff] [wa]s a party to this appeal").

Here, Plaintiff has consented to a United States magistrate judge conducting all proceedings in this case under 28 U.S.C. § 636(c). That statute provides that "[u]pon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings . . . and order the entry of judgment in the case . . . ." 28 U.S.C. § 636(c). Because the named Defendants have not yet been served, the undersigned concludes that they are not presently parties whose consent is required to permit the undersigned to conduct a preliminary review under the PLRA, in the same way that they are not parties who will be served with or given notice of this opinion. *See Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995) ("The record does not contain a

consent from the defendants[; h]owever, because they had not been served, they were not parties to this action at the time the magistrate entered judgment.").[1]

Under the PLRA, the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim. Additionally, the Court will deny Plaintiff's request for the appointment of counsel.

## Discussion

### I.    Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Richard A. Handlon Correctional Facility (MTU) in Ionia, Ionia County, Michigan. The events about which he complains, however, occurred at the Bellamy Creek Correctional Facility (IBC) in Ionia, Ionia County, Michigan. Plaintiff sues the following IBC officials: Correctional Officer Unknown Krager, Security Threat Group (STG) Supervisor Unknown Party #1, Deputy

---

[1] *But see Coleman v. Lab. & Indus. Rev. Comm'n of Wis.*, 860 F.3d 461, 471 (7th Cir. 2017) (concluding that, when determining which parties are required to consent to proceed before a United States magistrate judge under 28 U.S.C. § 636(c), "context matters" and the context the United States Supreme Court considered in *Murphy Bros.* was nothing like the context of a screening dismissal pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c)); *Williams v. King*, 875 F.3d 500, 503–04 (9th Cir. 2017) (relying on Black's Law Dictionary for the definition of "parties" and not addressing *Murphy Bros.*); *Burton v. Schamp*, 25 F.4th 198, 207 n.26 (3d Cir. 2022) (premising its discussion of "the term 'parties' solely in relation to its meaning in Section 636(c)(1), and . . . not tak[ing] an opinion on the meaning of 'parties' in other contexts").

Warden Unknown Party #2, and Warden Matt Macauley. (Compl., ECF No. 1, PageID.1–2.)[2] Plaintiff indicates that he is suing all Defendants in their official capacities. (*Id.*, PageID.2.) Plaintiff also states that he sues Defendant Krager as a "Correctional Officer" and Defendant Unknown Party #1 as "Training STG." (*Id.*)

In Plaintiff's complaint, he alleges that on December 8, 2019, he was assaulted by two inmates, "who had knives as weapons." (*Id.*, PageID.3.) Plaintiff claims that he was "also assaulted" by Defendant Krager "by being tased when this officer discharged [the] ECD taser device on Plaintiff . . . when [Plaintiff] was being assaulted, more than 2 times." (*Id.*)

Plaintiff alleges that Defendant Krager failed to protect him and "instead helped [the] unknown inmates who were assaulting Plaintiff when [Defendant] Krager caused more damage and injuries to Plaintiff's back." (*Id.*) Plaintiff claims that as a result of Defendant Krager's actions, he has had "to keep asking for medical help concerning injuries to Plaintiff . . . caused by [the] taser device." (*Id.*)

Plaintiff asserts that Defendants Unknown Party #1, Unknown Party #2, and Macauley "caused undue injuries to Plaintiff . . . by giving tasers to untrained officers who used excessive force on Plaintiff." (*Id.*) Plaintiff has "filed grievances to all 3 steps." (*Id.*) Plaintiff claims that he is "not getting proper medical help for the undue injuries that the ECD taser device caused to Plaintiff." (*Id.*)

Based on the foregoing allegations, Plaintiff avers that Defendants violated his rights under the Eighth and Fourteenth Amendments to the U.S. Constitution. (*Id.*) Additionally, the Court construes Plaintiff's complaint as asserting that Defendant Krager violated his rights under state

---

[2] In this opinion, the Court corrects the punctuation and capitalization in the quotations from Plaintiff's complaint.

law when he assaulted Plaintiff by using the taser. (*See id.*) As relief, Plaintiff requests compensatory and punitive damages, as well as injunctive and declaratory relief. (*See id.*, PageID.4–5).

## II.     Request for the Appointment of Counsel

In Plaintiff's complaint, he requests the appointment of counsel. (*See* ECF No. 1, PageID.4.) Indigent parties in civil cases have no constitutional right to a court-appointed attorney. *Abdur-Rahman v. Mich. Dep't of Corr.*, 65 F.3d 489, 492 (6th Cir. 1995); *Lavado v. Keohane*, 992 F.2d 601, 604–05 (6th Cir. 1993). The Court may, however, request an attorney to serve as counsel, in the Court's discretion. *Abdur-Rahman*, 65 F.3d at 492; *Lavado*, 992 F.2d at 604–05; *see Mallard v. U.S. Dist. Ct.*, 490 U.S. 296 (1989).

Appointment of counsel is a privilege that is justified only in exceptional circumstances. In determining whether to exercise its discretion, the Court should consider the complexity of the issues, the procedural posture of the case, and Plaintiff's apparent ability to prosecute the action without the help of counsel. *See Lavado*, 992 F.2d at 606. The Court has carefully considered these factors and has determined that the assistance of counsel is not necessary to the proper presentation of Plaintiff's position. Plaintiff's request for the appointment of counsel (ECF No. 1, PageID.4) therefore will be denied.

## III.    Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The

court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because Section 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under Section 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A.    Official Capacity Claims

Plaintiff indicates that he is suing all Defendants in their official capacities. (Compl., ECF No. 1, PageID.2.)

A suit against an individual in his or her official capacity is equivalent to a suit against the governmental entity; in this case, the MDOC. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994). The states and their departments

6

are immune under the Eleventh Amendment from suit in the federal courts, unless the state has waived immunity or Congress has expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98–101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1994). Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court. *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986). In numerous opinions, the Sixth Circuit has specifically held that the MDOC is absolutely immune from a Section 1983 suit under the Eleventh Amendment. *See, e.g.*, *Harrison v. Michigan*, 722 F.3d 768, 771 (6th Cir. 2013); *Diaz v. Mich. Dep't of Corr.*, 703 F.3d 956, 962 (6th Cir. 2013); *McCoy v. Michigan*, 369 F. App'x 646, 653–54 (6th Cir. 2010).

Here, Plaintiff seeks monetary damages, as well as declaratory and injunctive relief. An official capacity defendant is absolutely immune from monetary damages. *See Will*, 491 U.S. at 71; *Turker v. Ohio Dep't of Rehab. & Corr.*, 157 F.3d 453, 456 (6th Cir. 1998). The Court, therefore, will dismiss Plaintiff's claims for monetary damages against Defendants Krager, Unknown Party #1, Unknown Party #2, and Macauley in their official capacities.

Although damages claims against official capacity defendants are properly dismissed, an official capacity action seeking injunctive relief constitutes an exception to sovereign immunity. *See Ex parte Young*, 209 U.S. 123, 159–60 (1908) (holding that the Eleventh Amendment immunity does not bar prospective injunctive relief against a state official). The United States Supreme Court has determined that a suit under *Ex parte Young* for prospective injunctive relief should not be treated as an action against the state. *Kentucky v. Graham*, 473 U.S. 159, 167 n.14

(1985). Instead, the doctrine is a fiction recognizing that unconstitutional acts cannot have been authorized by the state and therefore cannot be considered done under the state's authority. *Id.*

Nonetheless, the Supreme Court has cautioned that, "*Ex parte Young* can only be used to avoid a state's sovereign immunity when a 'complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" *Ladd v. Marchbanks*, 971 F.3d 574, 581 (6th Cir. 2020) (quoting *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002)). Here, Plaintiff is no longer confined at IBC, which is where he avers that Defendants Krager, Unknown Party #1, Unknown Party #2, and Macauley are employed. The Sixth Circuit has held that transfer to another correctional facility moots a prisoner's injunctive and declaratory claims. *See Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996) (holding that a prisoner-plaintiff's claims for injunctive and declaratory relief became moot when the prisoner was transferred from the prison about which he complained); *Mowatt v. Brown*, No. 89-1955, 1990 WL 59896 (6th Cir. May 9, 1990); *Tate v. Brown*, No. 89-1944, 1990 WL 58403 (6th Cir. May 3, 1990); *Williams v. Ellington*, 936 F.2d 881 (6th Cir. 1991). Underlying this rule is the premise that such relief is appropriate only where plaintiff can show a reasonable expectation or demonstrated probability that he is in immediate danger of sustaining direct future injury as the *result* of the challenged official conduct. *Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983). Past exposure to an isolated incident of illegal conduct does not, by itself, sufficiently prove that the plaintiff will be subjected to the illegal conduct again. *See, e.g., id.*; *Alvarez v. City of Chicago*, 649 F. Supp. 43 (N.D. Ill. 1986); *Bruscino v. Carlson*, 654 F. Supp. 609, 614, 618 (S.D. Ill. 1987), *aff'd*, 854 F.2d 162 (7th Cir. 1988); *O'Shea v. Littleton*, 414 U.S. 488, 495–96 (1974).

Plaintiff is now incarcerated at MTU, and Defendants Krager, Unknown Party #1, Unknown Party #2, and Macauley are not employed at that correctional facility. Therefore,

Plaintiff cannot maintain his claims for injunctive and declaratory relief against Defendants, and the Court will dismiss these claims.

In summary, Plaintiff's claims against Defendants Krager, Unknown Party #1, Unknown Party #2, and Macauley in their official capacities will be dismissed. With respect to two of the named Defendants—Defendants Krager and Unknown Party #1—in addition to indicating that he is suing them in their official capacities, Plaintiff also states that he sues Defendant Krager as a "Correctional Officer" and Defendant Unknown Party #1 as "Training STG." (Compl., ECF No. 1, PageID.2.) Under these circumstances, it is unclear whether Plaintiff intended to sue Defendants Krager and Unknown Party #1 in their individual capacities. To the extent that Plaintiff intended to sue any of the named Defendants in their individual capacities, the Court addresses these claims below.

### B.    Defendants Unknown Party #1, Unknown Party #2, and Macauley

Plaintiff alleges that STG Supervisor Unknown Party #1, Deputy Warden Unknown Party #2, and Warden Macauley "caused undue injuries to Plaintiff . . . by giving tasers to untrained officers who used excessive force on Plaintiff." (Compl., ECF No. 1, PageID.3.) Plaintiff also alleges that he has "filed grievances to all 3 steps." (*Id.*)

To the extent that Plaintiff seeks to hold Defendants Unknown Party #1, Unknown Party #2, and Macauley liable for the actions of their subordinates, government officials, such as these Defendants, may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575–76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon

the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, as discussed above, Section 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.

The United States Court of Appeals for the Sixth Circuit repeatedly has summarized the minimum required to constitute active conduct by a supervisory official:

> "[A] supervisory official's failure to supervise, control or train the offending individual is not actionable *unless* the supervisor either encouraged the specific incident of misconduct or in some other way directly participated in it." *Shehee*, 199 F.3d at 300 (emphasis added) (internal quotation marks omitted). We have interpreted this standard to mean that "at a minimum," the plaintiff must show that the defendant "at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers."

*Peatross v. City of Memphis*, 818 F.3d 233, 242 (6th Cir. 2016) (quoting *Shehee*, 199 F.3d at 300); *see also Copeland v. Machulis*, 57 F.3d 476, 481 (6th Cir. 1995)); *Walton v. City of Southfield*, 995 F.2d 1331, 1340 (6th Cir. 1993),

Here, Plaintiff alleges in a conclusory manner that Defendants Unknown Party #1, Unknown Party #2, and Macauley gave "tasers to untrained officers." (Compl., ECF No. 1, PageID.3.) However, Plaintiff fails to allege any *facts* to support this conclusory assertion. Further, Plaintiff fails to allege any facts showing that Defendants Unknown Party #1, Unknown Party #2, and Macauley encouraged or condoned the conduct of their subordinates, or authorized, approved, or knowingly acquiesced in the conduct. Plaintiff's vague and conclusory allegations of supervisory responsibility are insufficient to demonstrate that Defendants Unknown Party #1, Unknown Party #2, and Macauley were personally involved in the alleged violations of Plaintiff's constitutional rights. Because Plaintiff has failed to allege that Defendants Unknown Party #1,

Unknown Party #2, and Macauley engaged in any active unconstitutional behavior, Plaintiff fails to state a claim against them.

### C.  Defendant Krager

#### 1.  Eighth Amendment Claims

Plaintiff alleges that Defendant Krager violated his Eighth Amendment rights by using excessive force against him, by failing to protect him during an assault by two other inmates, and because he has received inadequate medical care. (Compl., ECF No. 1, PageID.3.) The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous," nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345–46 (1981).

#### a.  Excessive Force

As relevant to excessive force claims, the Eighth Amendment prohibits conditions of confinement which, although not physically barbarous, "involve the unnecessary and wanton infliction of pain." *Id.* at 346 (quoting *Gregg v. Georgia*, 428 U.S. 153, 183 (1976)). Among unnecessary and wanton inflictions of pain are those that are "totally without penological justification." *Id.* However, not every shove or restraint gives rise to a constitutional violation. *Parrish v. Johnson*, 800 F.2d 600, 604 (6th Cir. 1986); *see also Hudson v. McMillian*, 503 U.S. 1, 9 (1992). "On occasion, '[t]he maintenance of prison security and discipline may require that inmates be subjected to physical contact actionable as assault under common law.'" *Cordell v. McKinney*, 759 F.3d 573, 580 (6th Cir. 2014) (quoting *Combs v. Wilkinson*, 315 F.3d 548, 556 (6th Cir. 2002)).

There is an objective component and a subjective component to this type of Eighth Amendment claim. *Santiago v. Ringle*, 734 F.3d 585, 590 (6th Cir. 2013) (citing *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001)). First, "[t]he subjective component focuses on the

state of mind of the prison officials." *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011). Courts ask "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 7. Second, "[t]he objective component requires the pain inflicted to be 'sufficiently serious.'" *Williams*, 631 F.3d at 383 (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). "The Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort 'repugnant to the conscience of mankind.'" *Hudson*, 503 U.S. at 9–10 (quoting *Whitley v. Albers*, 475 U.S. 312, 327 (1986)). The objective component requires a "contextual" investigation, one that is "responsive to 'contemporary standards of decency.'" *Id.* at 8 (quoting *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)). While the extent of a prisoner's injury may help determine the amount of force used by the prison official, it is not dispositive of whether an Eighth Amendment violation has occurred. *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010). "When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated . . . whether or not significant injury is evident." *Hudson*, 503 U.S. at 9.

Plaintiff's claim regarding Defendant Krager's use of the taser must be analyzed under the Supreme Court authority limiting the use of force against prisoners. This analysis must be made in the context of the constant admonitions by the Supreme Court regarding the deference that courts must accord to prison or jail officials as they attempt to maintain order and discipline within dangerous institutional settings. *See, e.g.*, *Whitley*, 475 U.S. at 321–22. The Supreme Court has held that "whenever guards use force to keep order," the standards enunciated in *Whitley* should be applied. *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992); *see also Wilkins v. Gaddy*, 559 U.S. 34, 37–39 (2010). Under *Whitley*, the core judicial inquiry is "whether force was applied in a good-

faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 6–7; *Wilkins*, 559 U.S. at 37. In determining whether the use of force is wanton and unnecessary, the court should evaluate the need for application of force, the relationship between that need and the amount of force used, the threat "reasonably perceived by the responsible officials," and any efforts made to temper the severity of the forceful response. *Hudson*, 503 U.S. at 7 (citing *Whitley*, 475 U.S. at 321); *accord Griffin v. Hardrick*, 604 F.3d 949, 953–54 (6th Cir. 2010); *McHenry v. Chadwick*, 896 F.2d 184 (6th Cir. 1990).

In this action, Plaintiff alleges that on December 8, 2019, he was assaulted by two inmates, "who had knives as weapons." (Compl., ECF No. 1, PageID.3.) Plaintiff claims that he was "also assaulted" by Defendant Krager "by being tased when this officer discharged [the] ECD taser device on Plaintiff . . . when [he] was being assaulted, more than 2 times." (*Id.*) Plaintiff suggests that as a result of the assault by the other inmates and Defendant Krager's use of the taser, Plaintiff sustained an injury to his back. (*See id.*)

As an initial matter, Plaintiff does not allege that Defendant Krager's use of the taser to break up a fight, in which two inmates were attacking Plaintiff with knives, was completely unwarranted. Additionally, the facts alleged by Plaintiff do not support the inference that Defendant Krager intentionally hit Plaintiff with the taser. Instead, Plaintiff appears to suggest that Defendant Krager was "untrained" in the use of a taser, (*see id.* (stating that the supervisory defendants "g[ave] tasers to untrained officers who used excessive force on Plaintiff")), and that Defendant Krager's deployment of the taser was a per se violation of the Eighth Amendment because it struck Plaintiff, apparently in the back. (*See id.*)

With respect to Plaintiff's assertion that Defendant Krager was "untrained," an officer's failure to comply with training alone—while perhaps negligent—does not state an Eighth

Amendment claim. *See Daniels v. Williams*, 474 U.S. 327, 333 (1986). Furthermore, as to Defendant Krager's use of the taser, prisons and prison officials have a legitimate interest in maintaining security, order, and in having prisoners obey orders. *Bell v. Wolfish*, 441 U.S. 520, 560 (1979); *Caldwell v. Moore*, 968 F.2d 595, 599–601 (6th Cir. 1992). "Corrections officers do not violate a prisoner's Eighth Amendment rights when they apply force 'in a good-faith effort to maintain or restore discipline.'" *Roberson v. Torres*, 770 F.3d 398, 406 (6th Cir. 2014) (quoting *Jennings v. Mitchell*, 93 F. App'x 723, 725 (6th Cir. 2004)). A prison official's use of a taser to maintain security and order, such as the use of a taser upon responding to a physical fight between prisoners, does not, on its own, state an Eighth Amendment claim. *See, e.g.*, *Caldwell*, 968 F.2d at 600–02 (collecting cases) (holding that the use of a stun gun on a disruptive prisoner to restore order and discipline was not an Eighth Amendment violation); *Jasper v. Thalacker*, 999 F.2d 353, 354 (8th Cir. 1993) (concluding that the use of a stun gun to subdue a noncompliant prisoner did not violate the Eighth Amendment when the prisoner failed to show that the officers used it "maliciously and sadistically to cause harm" (citation omitted)); *Michenfelder v. Sumner*, 860 F.2d 328, 336 (9th Cir. 1988) (upholding use of a taser on a prisoner for failure to comply with a strip search); *Gresham v. Steward*, No. 13-10189, 2014 WL 4231295, at *9–10 (E.D. Mich. Aug. 27, 2014) (finding that the use of a taser on a prisoner who refused to stop punching another prisoner even after ordered to do so was not excessive given the defendant's "interest in the threat posed by the altercation to other inmates, prison workers, administrators, and visitors" (citation omitted)).

Here, viewing the factual allegations in the complaint in the light most favorable to Plaintiff, the factual allegations show that Defendant Krager used the taser to break up a fight, in which Plaintiff states two other inmates were attacking Plaintiff with knives. (*See* Compl., ECF No. 1, PageID.3.) Plaintiff has alleged no facts to suggest that Defendant Krager used the taser

14

maliciously or sadistically to cause harm; instead, the facts alleged by Plaintiff suggest that Defendant Krager used the taser in a good-faith effort to restore order and to stop a fight in which inmates were using weapons. *See Hudson*, 503 U.S. at 6–7; *see also Whitley*, 475 U.S. 312. Applying the standard articulated in *Hudson*, the Court concludes that, as shown by the facts alleged by Plaintiff, some level of non-lethal force was necessary to restore order and to protect Plaintiff from the two attacking inmates. *Hudson*, 503 U.S. at 6–7. It is unfortunate that Plaintiff was struck by Defendant Krager's taser when Krager deployed it to try to stop the ongoing fight, and the Court does not minimize this; however, deploying a taser in these circumstances—with no other facts alleged to suggest that the force was used maliciously or sadistically to cause harm—does not support an inference that Defendant Krager's use of the taser constituted excessive force.

In summary, under the circumstances alleged in the complaint, Plaintiff has failed to show that Defendant Krager's use of the taser when trying to stop an ongoing fight—in which two inmates were attacking Plaintiff with knives—violated contemporary standards of decency. Accordingly, the Court will dismiss Plaintiff's Eighth Amendment excessive force claim against Defendant Krager.

### b.      Failure to Protect

Plaintiff also alleges that Defendant Krager violated his Eighth Amendment rights by failing to protect him during the assault by the other two inmates. (*See* Compl., ECF No. 1, PageID.3.)

In its prohibition of "cruel and unusual punishments," the Eighth Amendment places restraints on prison officials, directing that they must "take reasonable measures to guarantee the safety of the inmates." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Hudson v. Palmer*, 468 U.S. 517, 526–27 (1984)). To establish liability under the Eighth Amendment for a claim based on a failure to prevent harm to a prisoner, a plaintiff must show that the prison official acted

with "deliberate indifference" to a substantial risk of serious harm facing the plaintiff. *Id.* at 834; *Helling v. McKinney*, 509 U.S. 25, 32 (1993); *Bishop v. Hackel*, 636 F.3d 757, 766–67 (6th Cir. 2011); *Curry v. Scott*, 249 F.3d 493, 506 (6th Cir. 2001); *Woods v. Lecureux*, 110 F.3d 1215, 1222 (6th Cir. 1997). Deliberate indifference is a higher standard than negligence and requires that "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837; *see also Bishop*, 636 F.3d at 766–67.

Plaintiff alleges no facts indicating that Defendant Krager was aware of a substantial risk that the two prisoners would attack Plaintiff. Plaintiff's sole allegation regarding Defendant Krager's failure to protect him is that Defendant Krager "helped [the] unknown inmates who were assaulting Plaintiff when [Defendant] Krager caused more damage and injuries to Plaintiff's back." (Compl., ECF No. 1, PageID.3.) However, Plaintiff provides no additional facts or explanation about how Defendant Krager "helped" the other inmates. As best as the Court can discern, Plaintiff apparently believes that because Defendant Krager intervened during the other inmates' assault on Plaintiff, and in doing so deployed his taser, which struck Plaintiff, Defendant Krager "helped" the other inmates. Although Plaintiff clearly disliked the manner in which Defendant Krager intervened in the assault on Plaintiff—i.e., by deploying his taser—Plaintiff does not allege that Defendant Krager failed to intervene when he became aware of the assault or that Defendant Krager aided the inmate-assailants in some other manner. Accordingly, Plaintiff's allegations do not permit a reasonable inference that Defendant Krager was deliberately indifferent to Plaintiff's safety either before he intervened or when he intervened during the other inmates' assault on

Plaintiff. Plaintiff therefore fails to state an Eighth Amendment failure-to-protect claim against Defendant Krager.

### c.        Medical Care

Plaintiff claims that as a result of Defendant Krager's actions, he has had "to keep asking for medical help concerning injuries to Plaintiff . . . caused by [the] taser device." (Compl., ECF No. 1, PageID.3.) Without providing any further explanation, Plaintiff also claims that he is "not getting proper medical help for the undue injuries that the ECD taser device caused to Plaintiff." (*Id.*)

The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Estelle*, 429 U.S. at 104–05; *Comstock*, 273 F.3d at 702. A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer*, 511 U.S. at 834. To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 899 (6th Cir. 2004); *see also Phillips v. Roane Cnty.*, 534 F.3d 531, 539–40 (6th Cir. 2008). The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind" in denying medical care. *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000).

In this action, although Plaintiff alleges that, as a result of Defendant Krager's use of the taser, Plaintiff has had to continue to ask for "medical help" and that he is not receiving "proper medical help," Plaintiff does not allege that Defendant Krager had any involvement in Plaintiff's receipt, or lack thereof, of medical care. (Compl., ECF No. 1, PageID.3.) Where a person is named

17

as a defendant without an allegation of specific conduct, the complaint or claim is subject to dismissal, even under the liberal construction afforded to *pro se* complaints. *See Gilmore v. Corr. Corp. of Am.*, 92 F. App'x 188, 190 (6th Cir. 2004) (dismissing complaint where plaintiff failed to allege how any named defendant was involved in the violation of his rights); *Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (dismissing plaintiff's claims where the complaint did not allege with any degree of specificity which of the named defendants were personally involved in or responsible for each alleged violation of rights). Because Plaintiff fails to allege that Defendant Krager had any involvement in his receipt of medical care, Plaintiff fails to state an Eighth Amendment claim against Defendant Krager regarding Plaintiff's allegedly inadequate medical care.

## 2.    Fourteenth Amendment Claims

Plaintiff also alleges that Defendant Krager violated his rights under the Fourteenth Amendment. (Compl., ECF No. 1, PageID.3.) Plaintiff provides no further explanation regarding how Defendant Krager violated his Fourteenth Amendment rights.

To the extent that Plaintiff intended to raise a substantive due process claim regarding Defendant Krager's use of a taser, he fails to state such a claim. "Substantive due process 'prevents the government from engaging in conduct that shocks the conscience . . . or interferes with rights implicit in the concept of ordered liberty.'" *Prater v. City of Burnside*, 289 F.3d 417, 431 (6th Cir. 2002) (quoting *United States v. Salerno*, 481 U.S. 739, 746 (1987)).

"Substantive due process . . . serves the goal of preventing governmental power from being used for purposes of oppression, regardless of the fairness of the procedures used." *Pittman v. Cuyahoga Cnty. Dep't of Child. & Fam. Servs.*, 640 F.3d 716, 728 (6th Cir. 2011) (quoting *Howard v. Grinage*, 82 F.3d 1343, 1349 (6th Cir. 1996)). "Conduct shocks the conscience if it 'violates the

decencies of civilized conduct.'" *Range v. Douglas*, 763 F.3d 573, 589 (6th Cir. 2014) (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 846–47 (1998)).

"Where a particular [a]mendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that [a]mendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims.'" *Albright v. Oliver*, 510 U.S. 266, 273–75 (1994) (quoting *Graham v. Connor*, 490 U.S. 386, 394 (1989)) (holding that the Fourth Amendment, not substantive due process, provides the standard for analyzing claims involving unreasonable search or seizure of free citizens). If such an amendment exists, the substantive due process claim is properly dismissed. *See Heike v. Guevara*, 519 F. App'x 911, 923 (6th Cir. 2013). In this case, the Eighth Amendment provides an explicit source of constitutional protection to Plaintiff for his claims against Defendant Krager for Defendant's use of the taser. *See Dodson v. Wilkinson*, 304 F. App'x 434, 438 (6th Cir. 2008) (holding that the Eighth Amendment supplies the explicit textual source of constitutional protection for claims governing a prisoner's health and safety). Consequently, any intended substantive due process claim is properly dismissed.

### 3. State Law Claim

In addition to Plaintiff's federal claims against Defendant Krager, Plaintiff suggests that Defendant Krager violated his rights under state law by "assaulting" him when Defendant Krager tased Plaintiff. (Compl., ECF No. 1, PageID.3.) Claims under Section 1983 can only be brought for "deprivations of rights secured by the Constitution and laws of the United States." *Lugar v. Edmondson Oil Co., Inc.*, 457 U.S. 922, 924 (1982). Section 1983 does not provide redress for a violation of a state law or MDOC policy. *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995); *Sweeton v. Brown*, 27 F.3d 1162, 1166 (6th Cir. 1994). Plaintiff's assertion that Defendant Krager violated state law fails to state a claim under Section 1983.

19

Furthermore, in determining whether to retain supplemental jurisdiction over state law claims, "[a] district court should consider the interests of judicial economy and the avoidance of multiplicity of litigation and balance those interests against needlessly deciding state law issues." *Landefeld v. Marion Gen. Hosp., Inc.*, 994 F.2d 1178, 1182 (6th Cir. 1993); *see also Moon v. Harrison Piping Supply*, 465 F.3d 719, 728 (6th Cir. 2006) ("Residual jurisdiction should be exercised only in cases where the interests of judicial economy and the avoidance of multiplicity of litigation outweigh our concern over needlessly deciding state law issues." (internal quotation marks omitted)). Dismissal, however, remains "purely discretionary." *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) (citing 28 U.S.C. § 1367(c)); *Orton v. Johnny's Lunch Franchise, LLC*, 668 F.3d 843, 850 (6th Cir. 2012).

Because Plaintiff's federal claims against Defendant Krager will be dismissed, the Court will decline to exercise supplemental jurisdiction over Plaintiff's state law claim against Defendant Krager. Therefore, Plaintiff's state law claim against Defendant Krager will be dismissed without prejudice to Plaintiff's ability to bring the claim in the state courts.

## Conclusion

The Court will deny Plaintiff's request for the appointment of counsel. (ECF No. 1, PageID.4). Further, having conducted the review required by the PLRA, the Court determines that Plaintiff's complaint against Defendants Unknown Party #1, Unknown Party #2, and Macauley will be dismissed for failure to state a claim under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). Plaintiff's federal claims against Defendant Krager will also be dismissed for failure to state a claim. Plaintiff's state law claim against Defendant Krager will be dismissed without prejudice because the Court declines to exercise supplemental jurisdiction over the claim.

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir.

1997). Although the Court concludes that Plaintiff's claims are properly dismissed, the Court does not conclude that any issue Plaintiff might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). Accordingly, the Court does not certify that an appeal would not be taken in good faith. Should Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610–11, unless Plaintiff is barred from proceeding *in forma pauperis*, *e.g.*, by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

An order and judgment consistent with this opinion will be entered.


Dated:   November 29, 2022                          /s/ Sally J. Berens
                                                    SALLY J. BERENS
                                                    U.S. Magistrate Judge